(No. 47977.—

THE VILLAGE OF PARK FOREST, Appellant, v. JACK
E. WALKER, Appellee.

*Opinion filed October 1, 1976.*

288

Richard W. Hall, Village Prosecutor, and Henry X. Dietch, Village Attorney, of Park Forest, for appellant.

Posanski, Krohn & Jacobs, of Chicago (William O. Krohn, of counsel), for appellee.

MR. JUSTICE CREBS delivered the opinion of the court:

The defendant, Jack E. Walker, was charged with driving a vehicle while under the influence of intoxicating liquor, in violation of an ordinance of the village of Park Forest. A jury of six returned a verdict for the plaintiff

village and assessed the maximum fine of $500. Judgment was entered on the verdict. The defendant appealed, and the Appellate Court for the First District reversed. (*Village of Park Forest v. Walker,* 32 Ill. App. 3d 210.) We have granted the plaintiff leave to appeal from the judgment of the appellate court.

The plaintiff's primary contention on appeal is that sufficient evidence was introduced at trial to sustain the jury's verdict. In its opinion, the appellate court noted that there were "considerable differences in the testimonies of the witnesses for each of the parties ***." In light of this, the court concluded that there was "insufficient credible evidence to support the verdict." (32 Ill. App. 3d 210, 213.) Since the appellate court reversed without remand, the court necessarily must have determined that, viewing all of the evidence in the light most favorable to the plaintiff, the evidence so overwhelmingly favored the defendant that no contrary verdict based upon that evidence could ever stand. (*Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill. 2d 494.) Accordingly, we must review the evidence adduced at trial in order to ascertain the correctness of the appellate court's determination.

The parties are agreed that, at approximately 5:55 p.m. on July 31, 1972, the defendant was driving an automobile on Sauk Trail Road, an east-west highway lying partly within the village of Park Forest. At the area of the occurrence, Sauk Trail Road is a four-lane highway. The defendant was proceeding westward in the inner lane, approaching the intersection of Sauk Trail Road and Orchard Drive. Near the intersection, the defendant's automobile collided with the rear end of a truck driven by William Langford, whose vehicle was also in the inner westbound lane. Langford's truck in turn struck the rear end of an automobile driven by Mrs. Ruth Mussen, who had stopped because of the stop sign located at the corner of Sauk Trail and Orchard. The Mussen automobile, a Ford Mustang, was located immediately in front of the truck

driven by Langford. There is no dispute that the area in question is within the confines of the village of Park Forest. Consequently, the only question is whether the defendant was under the influence of intoxicating liquor at the time he was operating his automobile.

A number of the plaintiff's witnesses gave testimony which tended to indicate that the defendant was intoxicated at the scene of the occurrence. An evidence deposition by Ruth Mussen was read to the jury. Mrs. Mussen testified that, after the collision, she walked back to the truck driven by William Langford. Langford pointed to the rear of his truck, whereupon the witness discovered the Cadillac driven by the defendant. Walking over to the open window of the defendant's automobile, she looked in and asked the defendant why he had caused the accident. In response, the defendant just looked at her without saying anything. According to Mrs. Mussen, the defendant was slumped over the wheel and "reeked" of alcohol. She also testified that the defendant was very red-faced, that his shirt was disheveled, and that he seemed to be in a daze. Mrs. Mussen reiterated that the defendant reeked of alcohol and stated that she knew what alcohol smelled like. The witness also saw the defendant carried from his automobile by two police officers and transported to a squad car. Mrs. Mussen confirmed that, in a statement given to the police, she had expressed the opinion that the defendant was in a "very drunken state" at the scene of the occurrence.

William Langford, driver of the truck, testified that, upon leaving his vehicle, he walked to the rear and saw the defendant being helped from his automobile by an officer who then placed the defendant in a squad car. At this time, the witness was standing some 10 feet away from the defendant. He noticed that the defendant's face was very flushed, that his clothes were disarranged, and that he was unsteady as though he couldn't handle himself. Langford testified that he and the fellow occupant of his truck then

drove to the police station with the officer and the defendant. During this time, he observed the defendant lying back on the seat, his face flushed and clothes disheveled. Langford also stated that the defendant smelled of alcohol, and based upon his past experience in dealing with various people who were under the influence of alcohol, he formed the opinion that the defendant was "very intoxicated" at the scene of the occurrence.

Barbara Carlson testified that she had been driving an automobile westward on Sauk Trail Road in the outer curb lane. Immediately after the collision, she parked and approached the defendant's automobile. Opening his door, she asked him if he was all right. According to Mrs. Carlson, the defendant responded by uttering a profanity and telling her to leave him alone. At the time, she noticed that the defendant was bleary-eyed, that his eyes were bloodshot, that his speech was slurred, and that he didn't seem to know what was going on. She also detected an odor of alcohol. Based upon her experience working in a hospital and observing people who were under the influence of alcohol on other occasions, Mrs. Carlson was of the opinion that the defendant was "stoned" at the time she observed him on the highway.

Also testifying as to the defendant's condition at the scene of the occurrence was Officer Brent Elliott of the Park Forest Police Department. Upon arriving at the scene a few minutes after the occurrence, he parked and proceeded to check the vehicles involved in the accident, beginning with that of the defendant. The witness observed the defendant seated behind the wheel and leaning slightly to his right. As soon as he walked up to the window of the defendant's vehicle, Officer Elliott detected a strong odor of alcohol. When he asked the defendant to step out of the car, the defendant did not respond. The witness then opened the door, reached in, removed the ignition key and again asked the defendant to step out. When the defendant still did not answer, the officer

reached in, removed the defendant, closed the door and then began walking the defendant to the squad car, supporting him under the arm. While proceeding to the squad car, the witness informed the defendant that he was under arrest for driving while under the influence of intoxicating liquor. According to Officer Elliott, when he first viewed the defendant he observed that the defendant's eyes were bloodshot and watery, his face was flushed and very red, his clothes were disarranged, he was very uncoordinated and unable to maintain his balance or direction of travel, and his speech was very slurred and slow. As they walked to the squad car, the defendant swayed from side to side, was very unsteady, didn't seem to realize where they were headed and had to be steered. The officer described the odor of alcohol as strong and very prevalent. He later testified that this odor was on the defendant's breath. While in the squad car, the defendant leaned over with his right shoulder to the door, slouched down, with his head resting partly on the door. Based upon his experience of almost three years on the police force and eight prior years as a naval hospital corpsman, during which time he had occasion to observe people under the influence of alcohol, Officer Elliott expressed the opinion that the defendant was under the influence while at the scene of the occurrence.

Each of the above witnesses testified to making similar observations regarding the defendant's appearance and conduct while at the Park Forest police station. In addition, Sergeant Leroy Lerchen and Officer Fred Bailey testified that, based upon their observation of the defendant at the station, both were of the view that he was under the influence of intoxicating liquor. At the station, Officer Bailey, who had previously directed traffic at the scene of the occurrence, proceeded to administer certain tests designed to measure the defendant's sense of balance, ability to walk a straight line, ability to touch finger to nose, and ability to turn around. According to Officer

Bailey, the defendant did not perform any of these tests successfully, despite prior instruction and demonstration as to the procedure to be followed. Officer Elliott, who recorded the results of the tests administered by Officer Bailey, also testified as to the defendant's inability to successfully perform the tests.

In response, the defense produced two witnesses who observed the defendant shortly after the occurrence. Philip Rosenblum testified that he was driving east on Sauk Trail Road when he passed the scene of the occurrence and saw the defendant sitting in his car. The witness thereupon drove around the block, parked his car and returned, only to see the defendant just getting into the squad car. Later, Rosenblum went to the police station and spoke to the defendant for a few minutes. The witness testified that he saw nothing unusual at the time about the defendant's appearance, walk, speech, clothing, or demeanor in general. He smelled no odor of alcohol on the defendant, and in his judgment the defendant was sober.

Emma Jean Hemingway, administrative assistant to the defendant, also testified on his behalf. She went to the Park Forest police station in response to a telephone call from the defendant. Mrs. Hemingway testified that the defendant looked uncomfortable, that he did not have a steady walk due to a prior condition, but that she observed absolutely no odor of alcohol on the defendant's breath and that he was "definitely sober." The witness testified that she arrived at the station at approximately 6:15 p.m. and remained until approximately 7:45 p.m., at which time she left to procure funds for the defendant's bail. According to Mrs. Hemingway, Officer Elliott informed the defendant between 7:15 and 7:30 p.m. that he would be charged with driving while under the influence of intoxicating liquor. She testified that, upon his release, the defendant drove her home in her car.

The defendant also testified on his own behalf. On the day in question, the defendant left his cottage in Crete

between 1:45 and 2:15 p.m. and drove to his office. While at his office, he spent 20 or 30 minutes discussing business with Joseph Johnson, a member of the school board. Between 4 and 4:15 p.m., the defendant left his office and drove to a nearby used car lot operated by Clarence Swets. There he met William Marosco, an associate and former classmate, who had come to the lot to look for a new car. After 5 or 10 minutes, the three left to go out to the defendant's cottage in Crete. The defendant wanted Swets to check the tires on his camper. Since he had never seen the defendant's cottage, Marosco decided to accompany them. The three left in separate vehicles and drove to the cottage, where they remained for 30 to 45 minutes. Upon their return, when they reached Sauk Trail Road Marosco turned right going .east, and the defendant and Swets proceeded westward. At Western Avenue, a north-south highway, Swets turned right and proceeded north. The defendant continued west on Sauk Trail and, shortly before reaching the Orchard Drive intersection, the accident occurred. The defendant testified that at no time during this period did he consume any alcoholic beverages, nor was he under the influence while operating his vehicle. Johnson, Marosco and Swets had previously testified and given accounts essentially corroborating that of the defendant.

The defendant also denied needing or receiving any assistance from Officer Elliott as the two entered the police station, denied that he was told prior to his arrival at the station that he would be charged with driving while under the influence of intoxicating liquor, and denied he was given any sobriety tests until after Mrs. Hemingway had departed to procure funds for his bail. In these respects, the defendant's testimony was directly contradictory to the testimony offered by Officer Elliott.

Much testimony was introduced concerning the manner of the defendant's driving as he approached the intersection, the position of the various vehicles prior to

the collision, the impact of the collision itself, the length of skid marks found at the scene, and the condition of the vehicles subsequent to the collision. While relevant to the issue of whether the defendant was driving while under the influence of intoxicating liquor, this evidence has lessened probative value in light of the voluminous testimony regarding the defendant's condition. However, one aspect of that testimony deserves further mention. During his testimony, and his subsequent argument to the jury, the defendant sought to attribute his unsteadiness and dazed condition to loss of his glasses, physical jarring and shock caused by the collision. Tending to contradict this was the testimony of Marjorie Klaser, who stated that she had followed the defendant's vehicle for 3½ to 4 miles prior to his approaching the Orchard Drive intersection. When Mrs. Klaser first saw the defendant's vehicle, her automobile was facing north on Miller Street, which intersects Sauk Trail Road. Mrs. Klaser had stopped at the corner of Miller and Sauk Trail. As the defendant's automobile passed in front of her, proceeding westward on Sauk Trail, the witness observed the defendant leaning toward the open window of his car, looking "drunk or very, very ill." Mrs. Klaser testified that she was positive the defendant was wearing no glasses at this time. The witness then made a left-hand turn, entering the westbound lane of Sauk Trail. Sauk Trail is a two-lane highway between Miller and Ashland, with no bends or obscured visibility, and here the witness saw the defendant's automobile weaving on and off the road. At one point, the defendant was completely off the road and, when he pulled back, he swerved into the eastbound lane and forced an oncoming car off the road. Later, during the ½-mile stretch of Sauk Trail between Western and Orchard, which at that point widens to four lanes, she saw the defendant's automobile straddling the inner and outer westbound lanes, an observation also made by Mrs. Carlson.

In an effort to impeach Mrs. Klaser, the defendant

elicited testimony from Swets and Mrs. Hemingway in support of his own testimony that it would have been impossible for his automobile to have completely left the road in the area alleged without landing in the ditch adjacent to the highway. However, photographs introduced into evidence by the plaintiff demonstrated that it would have been possible for the defendant's vehicle to have left the road in the manner described by Mrs. Klaser.

Through cross-examination of plaintiff's witnesses, and direct examination of his own, the defendant sought to establish that the odor testified to by the plaintiff's witnesses could have been caused by leakage of one or more fluids: paint being transported in Langford's truck, gasoline from Langford's ruptured gas tank, or antifreeze draining from the defendant's radiator. Langford voiced the opinion that there is no comparison between the odor produced by paint or antifreeze and that created by alcohol, and the other witnesses for the plaintiff testified to being able to recognize the odor of alcohol. Nonetheless, even assuming that the odors are comparable, the fact remains that each witness testified to detecting the odor while in close proximity to the defendant—Mrs. Mussen, Mrs. Carlson and Officer Elliott upon approaching the driver's door of the defendant's vehicle, and Langford while in the squad car. Additionally, Officer Elliott stated that he smelled alcohol on the defendant's breath, and Officer Bailey testified that there was an odor of alcohol about the defendant's person. Also, James Faulkner, a witness for the plaintiff, testified to coming on the scene after the collision and inspecting the three vehicles involved. Although Faulkner detected no alcoholic odor, he was also the only plaintiff's witness not to observe or approach the defendant. This circumstance affords further indication that the odor described by the plaintiff's witnesses came from the defendant's person and not the surrounding area.

Regarding the defendant's pre-occurrence witnesses,

Johnson's testimony is reconcilable with plaintiff's theory of the case, since he testified to seeing the defendant between 3:30 and 4 p.m., whereas the collision occurred at approximately 5:55 p.m. As to Swets and Marosco, Swets admitted to having known the defendant for 20 years, being very close to him, and having helped in the defendant's campaigns. Marosco testified to having known the defendant since 1937 and to having gone to law school with him. Considering their previous association with the defendant, and the fortuitous nature of their travels, the jury might have chosen to give less credence to their testimony. Moreover, the jury might have accepted their accounts but disputed the time sequence, and thus surmised that the defendant had time to stop for the purpose of consuming liquor after leaving Swets and Marosco and before the occurrence.

In our judgment, the weight of the evidence clearly preponderates in the plaintiff's favor. A majority of those witnesses who observed the defendant at the scene of the occurrence or shortly thereafter testified that he exhibited symptoms of intoxication and expressed the opinion that he was in fact intoxicated. While each side was able to point out minor discrepancies in the testimony, the witnesses who appeared for the plaintiff were strong and credible and their accounts detailed and essentially consistent. To the extent that conflicts arose in the testimony, the jury was free to assess the credibility of the witnesses and choose the more convincing version.

We believe that there is ample evidence in the record from which the jury could reasonably conclude that the defendant was driving his vehicle while under the influence of intoxicating liquor. Since the verdict of the jury is fully supported by the evidence, the appellate court erred in setting that verdict aside.

Nevertheless, the defendant alleges that other errors occurred during the course of the trial which necessitate a new trial. First, the defendant contends that the trial court

erred in denying his oral motion for a 12-member jury. The record establishes that, on the original appearance date, September 6, 1972, the plaintiff moved the court for "leave to have jury trial by six jurors." On January 12, 1973, the defendant filed a motion to strike the plaintiff's jury demand on the ground that the plaintiff "failed to comply with the provisions of the Practice Act relating to Jury Demands." On March 1, 1973, the trial court heard argument on this and other motions and denied the defendant's motion to strike. The court then set the cause for trial before a six-member jury on July 9, 1973. No further objection was made, and the defendant at this time made no request or demand for a 12-member jury. Subsequently, the defendant orally moved for a 12-member jury, and said motion was denied. The case then proceeded to trial with a six-member jury.

The transcript of the hearing on the motion to strike plaintiff's jury demand reveals that the argument concerning that motion dealt exclusively with the question of whether the plaintiff was obliged to pay jury fees. Defense counsel argued that the plaintiff had waived its right to file a jury demand by not paying jury fees by the date of its appearance. The trial court reserved ruling as to whether the fees should be paid, but found that nonpayment would not justify striking the plaintiff's jury demand, since the matter had been contested by the parties. Defense counsel then asked: "You're denying our motion, I take it, to strike the jury demand, then?" The court replied in the affirmative. It would thus appear that the defendant made no challenge to the sufficiency of the plaintiff's demand on the basis that it sought trial by only six jurors. Such a conclusion was also voiced by the defendant's appellate counsel during oral argument before this court. Moreover, we note that the defendant does not allege any error in the denial of his motion to strike. Accordingly, we must presume that the defendant concedes the plaintiff's right to file a demand for a trial by six jurors.

The parties have likewise not raised any issue regarding the defendant's right to subsequently demand a 12-member jury. Therefore, the only question before us is whether the defendant's jury demand was timely made. In *City of Danville v. Hartshorn,* 53 Ill. 2d 399, this court held that the right to jury trial in a municipal ordinance prosecution such as this is governed by section 64 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 64). Section 64 provides in relevant part as follows:

"(1) A plaintiff desirous of a trial by jury must file a demand therefor with the clerk at the time the action is commenced. A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his answer. Otherwise, the party waives a jury."

Section 64 refers to the *filing* of a demand, and thus contemplates a written motion. However, the section also requires that a defendant file his demand not later than the filing of his answer, thereby allowing a defendant to incorporate the demand into his answer. In municipal ordinance prosecutions, however, the defendant does not generally file an answer. In this respect, an ordinance prosecution is analogous to a proceeding in small claims court. There the defendant must file his jury demand by the time he is required to appear. (Ill. Rev. Stat. 1971, ch. 110A, par. 285.) The authors of the Historical and Practice Notes to Rule 285 state that "[t]his variation is due to the fact that normally there will be no answer in a small claim case." (Ill. Ann. Stat., ch. 110A, par. 285, Jenner and Tone, Historical and Practice Notes, at 324 (Smith-Hurd 1968).) In the instant case, the defendant filed a written appearance without including any jury demand.

We need not decide on the facts of this case whether a defendant in a municipal ordinance prosecution who fails to file a written jury demand by the time of his appearance has waived that right, pursuant to section 64 of the Civil Practice Act. In the case before us, the record is silent as to when the defendant's oral motion was made. While questioning during oral argument before this court reveal-

ed some dispute as to whether the defendant made his motion prior to the commencement of *voir dire,* the parties are agreed that the motion was made when the case was called for trial on July 23, 1973. At this point, more than 10 months had elapsed from the date the case was originally set for trial. The record indicates that seven different trial dates were scheduled before the trial finally took place. The defendant knew from the time of the plaintiff's first appearance that the plaintiff desired a six-member jury. In addition, the defendant knew that the case would definitely be tried before a jury of six at least as of March 1, 1973, yet he made no demand then, nor upon July 9, the next scheduled trial date. Clearly, by any yardstick the defendant's motion on the eve or commencement of trial cannot be considered timely.

Our conclusion would not be altered even if we were to treat the defendant's motion as a motion for leave to file a late jury demand pursuant to section 59 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 59), which states in pertinent part:

> "On good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment."

A motion for leave to file a late jury demand pursuant to section 59 is addressed to the sound discretion of the trial court. (*Hudson v. Leverenz,* 10 Ill. 2d 87.) In *Hudson,* we held that, based upon the facts of that case, the trial court had not abused its discretion in denying the defendants leave to file a late jury demand, despite allegations that the failure to timely file "resulted from 'misapprehension of the facts, mistake and inadvertence.' " (10 Ill. 2d 87, 94.) Similarly, the defendant in the instant case has not demonstrated any good cause for allowance of his motion, and the trial court did not abuse its discretion in denying said motion.

The defendant next alleges that reversible error occurred during the plaintiff's closing argument. Initially, it is argued that the plaintiff was improperly allowed to use a chart depicting the position of the defendant's automobile in a manner contrary to that indicated by the evidence. Use of a chart by counsel during closing argument is proper as a means of illustration. (*Caley v. Manicke,* 24 Ill. 2d 390, 394.) The plaintiff's chart purported to roughly depict the scene of the occurrence. The defendant's automobile was portrayed as resting in a southwesterly direction, with the right rear portion of the vehicle extending into the outer curb lane of Sauk Trail Road. Defendant concedes that Officer Elliott testified that the defendant's automobile came to rest in such a position. Also, plaintiff's counsel cautioned the jury that the chart was not to be taken as evidence, but rather as material for use by him during his closing argument. Finally, while defense counsel questioned the accuracy of the chart, he made no formal objection to its use. Counsel engaged in a colloquy relating to the propriety of the chart, concluding as follows:

"MR. POSANSKI: Well, I think that in the interest of accuracy the chart ought to be accurate.

MR. HALL: I think the chart is accurate.

MR. POSANSKI: Okay, excuse me for interrupting."

Considering these factors, we find no error in the use of the chart.

The defendant also contends that error occurred when counsel for the plaintiff briefly referred in argument to the defendant's refusal to take a breathalyzer test. It is true that there is a statutory bar against the admissibility of evidence of such refusal. (Ill. Rev. Stat. 1971, ch. 95½, par. 11—501(h).) Yet in the instant case it was defense counsel who introduced the defendant's alcoholic influence report into evidence, apparently for the purpose of

contrasting the form used by the village with that prepared by the National Safety Council. The report was admitted into evidence without restriction as to its purpose or use. Where an exhibit is admitted into evidence without restriction, it may be considered generally as evidence of facts stated therein. (*Dill v. Widman,* 413 Ill. 448, 452.) Although counsel for the plaintiff may have been better advised to have refrained from comment upon the defendant's refusal to take the breathalyzer, the defendant is in no position to complain that prejudice resulted from comment upon the contents of a report he himself offered into evidence.

During his closing, plaintiff's counsel also referred to an unidentified individual who helped to persuade the defendant to go peacefully with Officer Elliott to the police station. Counsel characterized this individual as someone whom the defendant knew but did not call to testify at trial. Officer Elliott did testify as to the presence of this individual, but the identity of this person and his relationship, if any, to the defendant were never established. Therefore, counsel's remark may have exceeded the bounds of permissible commentary. However, no objection was made to the remark, and thus any error is waived. (*Mulvey v. Illinois Bell Telephone Co.,* 53 Ill. 2d 591, 598.) We note too that, during direct examination of Officer Elliott, plaintiff's counsel and Officer Elliott each referred on separate occasions to the individual in question as a "friend" of the defendant, and defense counsel made no objection.

Lastly, defendant argues that prosecution under a municipal ordinance, rather than State statute, operated to deprive him of substantial constitutional rights. The defendant concedes that his argument runs counter to what has been "the established law of this state for some time." We are presented with no persuasive reason for altering that law now.

For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*