JORDAN TARK, Plaintiff-Appellee, *v.* SHEARSON/AMERICAN EX-PRESS, INC., Defendant-Appellant.

First District (1st Division)   No. 83—1744

Opinion filed March 19, 1984.—Rehearing denied May 7, 1984.

Thomas M. Knepper, Ltd., of Chicago (Thomas M. Knepper, of counsel), for appellant.

Boorstein, Freed, Zelechowski & Cohn, of Chicago (Leon Zelechowski and Robert Blecher, of counsel), for appellee.

JUSTICE GOLDBERG delivered the opinion of the court:

Jordan Tark (plaintiff) brought this action against Shearson/American Express, Inc. (defendant) for negligent misrepresentation. A jury found for plaintiff and awarded him $65,000. Defendant's post-trial motion was denied. Defendant appeals.

Defendant is a securities broker-dealer and commodity futures commission merchant. At all times relevant to this litigation, plaintiff was a trader of securities and commodity futures contracts. Prior to 1976 plaintiff established an account with defendant through which plaintiff traded securities. In 1976 plaintiff also opened a commodities margin account with defendant.

Under the customer agreement contract executed when the commodities account was established, defendant had discretion in determining how much cash plaintiff must keep in the account to secure the commodity futures contracts held therein. Defendant could, and did, increase the cash margin requirements on a daily basis. Defendant based its determination on the daily fluctuation of the price of commodities and its effect on the value of the futures contracts held in plaintiff's account.

In September of 1976, plaintiff began to trade cotton futures contracts through his account with defendant. In consultations with a broker employed by defendant, plaintiff developed a strategy of being "long" on cotton contracts. This was plaintiff's goal or objective. Under such a strategy, plaintiff would buy more cotton contracts than he would sell. This was based on the theory that the long-term price of cotton would rise. By December 31, 1976, plaintiff was long 18 cotton futures contracts in his account with defendant.

From December 1976 through January 1977 the price of cotton

exhibited a steep decline. On January 4, 1977, plaintiff instructed his broker, employed by defendant, to sell securities owned by plaintiff and put the proceeds into plaintiff's account to secure his long position in cotton. The securities were sold and the proceeds credited to plaintiff's account on January 5, 1977. Plaintiff testified the broker told him that when he gave the broker an order to sell stock, plaintiff would "get next-day credit for the proceeds of that stock into the commodity account."

Also on January 5, 1977, plaintiff ordered the broker to sell securities which were held in plaintiff's securities account with defendant and to transfer the proceeds into plaintiff's commodities account. Proceeds of this sale were promptly credited to plaintiff's commodities account. Also on January 7, 1977, plaintiff ordered defendant to sell the remaining securities in his securities account and transfer the proceeds to his commodities account.

The price of cotton futures continued to fall. On January 12, 1977, plaintiff's broker informed plaintiff that plaintiff was short of margin. The broker demanded plaintiff deposit $16,000 in his commodities account. To meet this margin call, plaintiff sold six of his "long" cotton contracts, and bought four "short" contracts. Because the price of cotton was then currently in decline, the fact that plaintiff was short on some cotton contracts acted to reduce the cash required to meet defendant's margin call.

On the morning of January 13, 1977, the broker informed plaintiff the liquidated cash value of plaintiff's commodities account was then only about $2,900. Plaintiff had already liquidated all of his securities and did not want to infuse more cash into his commodities account. Plaintiff therefore ordered defendant to liquidate all his contracts in the commodities account.

At about 12:30 p.m. on that same date, the broker informed plaintiff that an additional $16,000 had been "found" in plaintiff's commodities account, apparently from the sale of securities plaintiff had ordered on January 7. The broker attempted to salvage the contracts plaintiff had previously ordered liquidated. However, these long positions were already sold. The agent was only able to salvage plaintiff's four short contracts. Such a position would be advantageous to plaintiff only if the long-term price of cotton would fall.

On that same day, January 13, 1977, plaintiff informed the broker he was upset because defendant's actions resulted in plaintiff being short in the cotton market when his strategy was to be long on cotton. Plaintiff asked the broker what the management was going to do about it. Plaintiff did not specifically ask defendant to reinstate his

previous positions in cotton. The broker told plaintiff he did not know what "they" would do about the situation but he said he would inform his superiors. Plaintiff talked to the broker almost every day from January 14, 1977, to January 25, 1977. The broker could not give plaintiff a definitive answer as to defendant's intentions regarding the situation.

On or about January 25, plaintiff met with defendant's regional manager. Plaintiff testified, "I did all the talking." After the meeting, plaintiff was under the impression "absolutely nothing [was] going to be done." Plaintiff wrote and hand delivered a lengthy letter to defendant dated January 25, 1977. Plaintiff informed defendant that plaintiff intended to recoup his losses through litigation. Plaintiff also outlined the trades plaintiff would have made had his positions not been liquidated by defendant on January 12.

Defendant concedes that if the proceeds of the sale of securities which plaintiff ordered sold on January 7 had been properly credited to plaintiff's commodities account, defendant would not have issued the $16,000 margin call of January 12. Defendant also concedes the evidence adduced at trial is sufficient to support a finding that defendant's conduct was negligent. Thus the remaining basic issue is the question of determination of the damages due plaintiff. The parties do not agree upon the proper measure of damages.

Plaintiff takes the position he should recover his actual out-of-pocket losses. Plaintiff submitted evidence that his actual losses from the inaccurate information given to him by defendant were in the neighborhood of $90,000. Plaintiff offered in evidence, and the trial court received, a statement prepared by defendant showing amounts charged and credited to plaintiff for the month of January commencing with January 12, 1977. These figures show losses of about $90,000. This is apparently accurate since it appears from a document prepared by defendant and supported by testimony of an agent of defendant in open court.

In instructing the jury, the trial court gave an instruction submitted by plaintiff which modifies Illinois Pattern Jury Instruction (IPI), Civil, No. 30.01 (2d ed. 1971). This instruction reads:

> "If you decide for plaintiff on the question of liability, you must then fix the amount of damages which will reasonably and fairly compensate him for the losses plaintiff sustained as a result of defendant's negligence."

Defendant objected to this measure of damages instruction submitted by plaintiff. Defendant offered an instruction combined with a question for submission to the jury, both of which were rejected by

the trial judge:

"If you decide for the plaintiff on the question of liability, then the amount of damages which will reasonably and fairly compensate him will be determined by the court, as a matter of law, based upon your answer to the question which accompanies the form for a verdict in favor of plaintiff.

In determining the answer to that question, you must take into consideration the following factors:

1. The plaintiff's commodity trading experience and capabilities;

2. The plaintiff's financial resources;

3. The conduct, if any, of the defendant, which relates to restoration of the positions, and;

4. The nature of the cotton futures market.

The question asks you to identify the date during January, 1977, not later than which plaintiff should have taken action to restore his desired long and short cotton positions.

\* \* \*

We, the Jury, find for the plaintiff and against the defendant.

### QUESTION

Assume that plaintiff desired to maintain some or all of the positions liquidated in his account on January 12 or 13, 1977. In the exercise of ordinary care to minimize damages, what is the date not later than which he should have given an order to Shearson or some other commodities broker, directing that liquidated positions be reestablished?

_____, 1977."

■ We agree with the able and experienced trial judge in rejecting defendant's tendered instruction. The trial judge stated it was difficult to understand the question which defendant wished to put to the jury. In addition, this instruction in effect amounted to a directed verdict in favor of defendant because it would require plaintiff to repurchase each and all of his holdings which were liquidated by defendant. Also the instruction provided for the trial court to determine plaintiff's damages "as a matter of law \* \* \*."

In considering the measure of damages, we wish to make it clear that the record shows no evidence of wilful misconduct by the defendant or its agents. We are dealing here with a simple negligent error such as could happen during operation of any business. However, plaintiff is entirely without fault, and he was simply led far astray by the mistaken information given to him by the broker. Undoubtedly plaintiff acted in reliance upon the erroneous impression he had thus

received. As a result plaintiff suffered losses for which he should be properly compensated.

The operation of a commodities exchange and the activities resulting therefrom are simply a refined form of gambling. Thus, as negligent acts are unavoidable, it should be reasonably anticipated that losses of various kinds occur. Thus, courts have adopted diverse methods of fixing the measure of damages. As we would expect, the cases differ widely in formulating the measure of damage depending upon the varied factual backgrounds in the particular litigation before the court. Compare *Schultz v. Commodity Futures Trading Com.* (2d Cir. 1983), 716 F.2d 136, 140-41; *Chipser v. Kohlmeyer & Co.* (5th Cir. 1979), 600 F.2d 1061, 1068; *Letson v. Dean Witter Reynolds, Inc.* (N.D. Cal. 1982), 532 F. Supp. 500, 503-04; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Miller* (Tex. Civ. App. 1966), 401 S.W.2d 645, 649-50; and *Rice v. Price* (1960), 340 Mass. 502, 164 N.E.2d 891.

■ Relying principally upon *Letson*, defendant argues plaintiff is not entitled to any damages because his failures to repurchase his long cotton positions or to order defendant to reinstate his positions constitute a decision not to reenter the market as a matter of law. We believe the jury could have made the factual determination that plaintiff did not make a conscious decision to abandon his "long" trading strategy, from his testimony and the letter plaintiff wrote and delivered to defendant on January 25, 1977, as shown above. The "injured party is not actually required to reenter the market" to determine if and when he might have done so. *Schultz v. Commodity Futures Trading Com.* (2d Cir. 1983), 716 F.2d 136, 140.

■ As above shown, in the instant case, the instructions submitted by defendant in this regard were definitely not acceptable. The above given instruction, presented by plaintiff, is simple, clear and succinct and very close to the form suggested in the IPI. In our opinion, the careful trial judge had no alternative but to adopt the instruction tendered by plaintiff. "Generally, the trial court is under no obligation either to give jury instructions not requested by counsel or to rewrite instructions tendered by counsel." *People v. Underwood* (1978), 72 Ill. 2d 124, 129, 378 N.E.2d 513.

■ The plaintiff fixed his losses from defendant's records as being in the neighborhood of $90,000. The jury returned a verdict of $65,000. No person, aside from the jurors themselves, will ever know the exact rationale of this reduction in the liability of defendant. For example, the record submitted by defendant contained various figures indicating credits in the approximate amount of $20,000 to plaintiff's account. The jury may conceivably have reduced the amount due

plaintiff by these sums. In any event, it seems to us that the verdict of the jury is not unfair or unreasonable and it comports with the evidence. (See *Kosch v. Monroe* (1982), 104 Ill. App. 3d 1085, 1096, 433 N.E.2d 1062, citing *Hartigan v. Robertson* (1980), 87 Ill. App. 3d 732, 739, 409 N.E.2d 366, and cases there cited.) We find no error in this regard.

■ Defendant urges it was the duty of plaintiff to mitigate his loses and also that the trial judge should have entered a remittitur. In fact, the amount of the losses could not have been reduced by plaintiff and the amount testified to came directly from the records kept by defendant. It is clear that the verdict, being in the amount of $65,000, was in effect a remittitur or a reduction of liability accomplished by the jury. The jury saw and heard all of the witnesses and heard the final arguments of counsel. After receiving the instructions of the court, and having had a lengthy deliberation they decided that plaintiff's recovery should be reduced and they acted accordingly. In any event, as above shown, this difference between the amount of damages proved and that awarded by the jury does not require us to reject the verdict.

■ Defendant urges that the trial court received incompetent evidence which plaintiff wrongfully emphasized by improper closing argument. On redirect examination plaintiff asked defendant to explain the amount of plaintiff's net worth. Plaintiff made a brief statement by way of response and also added he would have been unable to ask for a loan secured by certain family stock because his father would not consent. Defendant objected only to "the latter portion" of this statement. The trial court overruled defendant's objection. No objection was made by defendant to the question or to the brief direct answer thereto.

It is correct that plaintiff mentioned the net worth portion of this testimony in closing argument. However, no objection was made by defendant to this argument. This contention was therefore waived. (*Village of Park Forest v. Walker* (1976), 64 Ill. 2d 286, 302, 356 N.E.2d 42.) For these reasons the judgment appealed from is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.