GUSTAVE WANNER, Plaintiff-Appellee, *v.* HARRY ALFRED KEENAN, Defendant-Appellant.

(No. 73-319;

Second District—September 27, 1974.

*Rehearing denied October 23, 1974.*

A. E. Sohn, of Chicago, for appellant.

David A. Decker, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

As the result of an auto collision, plaintiff sued for damages caused by

defendant Keenan's negligence and by the acts of one Kramer, d/b/a Echo Lake Inn, in selling alcoholic beverages to defendant. At the close of evidence, the trial court directed a verdict against defendant on the issue of liability. The jury found Kramer not guilty and assessed damages against defendant in the sum of $17,500.

Defendant appeals contending that reversible error occurred when the court (1) directed a verdict against him, (2) allowed plaintiff, in rebuttal argument, to make improper and prejudicial remarks, (3) improperly instructed the jury, (4) failed to admit all photographs of the accident scene, and (5) denied his motion to correct the record. Defendant also claims that damages awarded are excessive.

After spending a misty winter afternoon drinking and conversing with another patron at the Echo Lake Inn, defendant, at about 4:30 or 5 P.M., drove in a southerly direction along Route 59. As he approached the intersection of Route 14, he slowed to a speed of 10 to 15 m.p.h., noticed the traffic light turn green for his direction and observed a stationary car, its left turn signal flashing, in the inner northbound lane. For the most part, defendant's view of the northbound curb lane of Route 59 was obstructed by that vehicle. Without stopping, defendant made a left turn onto Route 14. Plaintiff's car, being driven by his son, simultaneously approached the intersection from the south in the curb lane of Route 59, traveling at a speed of approximately 25 m.p.h. Plaintiff was in the front passenger's seat, his wife in the rear. When about 6' from the intersection, plaintiff noticed defendant's car entering their path; he shouted to his son to "look out" as the son applied the brakes and swerved in an attempt to avoid a collision. In the southeast quadrant of the intersection, plaintiff's car struck the right front fender of defendant's car and, on impact plaintiff's head struck the right visor.

As a result of the occurrence, defendant pled guilty to the charge of reckless driving.

■■ Defendant claims that the question of his negligence and that of plaintiff's contributory negligence were matters to be resolved by the jury and argues that the trial court erred by directing a verdict on the issue of his liability. That argument, however, cannot survive the test of the *Pedrick* rule whereby a trial court may properly direct a verdict if the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510 (1967).

■■ Concerning the issue of defendant's negligence, his duty of ordinary care in making a left turn across oncoming traffic with the right of way is to ascertain whether or not he has a safe interval to make the turn, and to yield to oncoming traffic which is so close as to constitute an immediate

hazard. (Ill. Rev. Stat. 1971, ch. 95½, § 11—902.) The evidence, when viewed in its aspects most favorable to the defendant, established (by defendant's own admission) that his view of the curb lane was obstructed by a stationary car in the approaching center lane, that he could see only a short distance in the curb lane due to this obstruction, that in spite of these facts he proceeded to make his left turn without stopping to ascertain whether there was a safe interval in which to proceed, that he had had 4 or 5 shots of whiskey and 2 12-ounce bottles of beer at the tavern, that he felt a little drowsy but "all right," and that he pled guilty to reckless driving. After the impact, defendant continued through the intersection a little way before he got out of his auto to look at the damage. He testified that he felt dazed and wondered what hit him. A police officer testified that when he arrived on the scene, he asked defendant to pull his car to the end of a driveway; that defendant drove his car on the lawn; that he observed a heavy odor of alcohol coming from Mr. Keenan; that defendant could not find his identification and that when getting out of the car, defendant stumbled and could not walk on his own. The officer drove defendant to the police station where he conducted visual tests on the defendant; he testified that, in his opinion, defendant was under the influence of intoxicating liquor. Defendant denied having trouble finding his identification or having driven on a lawn. He also testified that he was not physically hurt in the accident and that he was in control of his physical and mental faculties.

Under these facts, we find the evidence of defendant's negligence so overwhelming that no contrary verdict could ever stand.

■■ Regarding the question of plaintiff's contributory negligence, defendant argues that there was evidence of plaintiff's failure to exercise ordinary care for his own safety, that there was evidence which indicated the driver was negligent and that such negligence is imputable to the plaintiff as an owner-passenger. When viewed in its aspects most favorable to the defendant, evidence shows that plaintiff, upon recognizing the immediate hazard, shouted a caution to the driver, and that the driver, traveling at a slow rate of speed, had commenced to apply his brakes at the time of plaintiff's warning and that he then swerved to avoid a collision. This evidence stands uncontradicted. Defendant claims that because, during cross-examination, plaintiff could not recall whether his headlights were on at the time of the collision and that therefore a question of fact existed as to plaintiff's contributory negligence and the negligence of his driver. We disagree. No evidence was offered to show that plaintiff's lights were not burning. By itself, plaintiff's lack of specific recollection on this point is insufficient to warrant a jury's conclusion that plaintiff was guilty of contributory negligence or that his driver was

negligent. Having reached these conclusions, the doctrine of imputed negligence is not applicable. Again, in accordance with the *Pedrick* rule, the trial court properly directed a verdict against defendant on the issue of liability.

Defendant alleges reversible error occurred during plaintiff's rebuttal argument in that (a) plaintiff indicated a negative inference could be drawn from the fact that defendant had not called as a witness the tavern patron with whom he had conversed during that afternoon; (b) plaintiff appealed to the jury to consider sympathy as an element of damages; and (c) unwarranted personal attacks upon defense counsel were not stricken nor was the jury instructed to disregard the remarks.

■■ Under the criteria of IPI—Civil 2d 5.01, it is true that no negative inference may be made from the failure to produce a witness if, as here, the witness was equally available to both parties. The record reveals, however, that the negative inference of the remark was directed against Kramer, not Keenan, and it did not therefore work to defendant's prejudice.

■■ The record belies defendant's claim that plaintiff raised the element of sympathy. As plaintiff's counsel clearly stated:

> "[Defense counsel] says don't give him any sympathy, and he mentioned the word sympathy about twenty times during the course of this trial. I've never mentioned the word sympathy. He's had sympathy from his family and friends. We are not here seeking sympathy. We are here seeking our remedy under the law. We are asking for a just verdict."

Inasmuch as the element of sympathy was initially injected into the case by defendant, plaintiff's remarks were a fair rebuttal.

■■ As to the personal attacks on defense counsel, we (despite defendant's failure to object) examine whether the remarks prompted prejudiciality sufficient to deny the defendant a fair trial. (*Belfield v. Coop*, 8 Ill.2d 293, 311-13 (1956).) The trial judge is responsible for the justice of his judgments (*Wozniak v. Segal*, 56 Ill.2d 457, 460 (1974)) and has a duty to control the trial in order to insure a just result (*City of Chicago v. Pridmore*, 12 Ill.2d 447, 453 (1957)). A reviewing court will grant the trial judge every reasonable presumption that he has properly performed his duties and exercised his discretionary powers. An argument must be clearly improper and prejudicial in order for a reviewing court to reverse a verdict on these grounds. (*Whiteside v. Evers*, 13 Ill.App.3d 1089, 1090-91 (1973).) The record here reveals that plaintiff's counsel characterized defense counsels as not being in good faith in their handling of the case. It was Kramer's counsel who objected to these references and his objections were overruled by the trial court. We note that the trial court, by

such overruling, by not injecting itself, sua sponte, into the argument, and by denying defendant's post-trial motion, indicated its conclusion that the argument was a fair rebuttal. It must also be noted that after hearing the rebuttal argument, which was directed with equal force against counsel for both defendants, the jury found Kramer not guilty. We do not find, under the facts shown by the record, that the remarks prompted prejudice which would deny defendant a fair trial.

Defendant next alleges that the trial court erred in refusing to instruct the jury that plaintiff's failure to call his wife or son as a witness raised a negative inference. Inasmuch as this instruction (IPI—Civil 2d 5.01) was refused after the trial court had already directed a verdict on defendant's liability, we examine whether the refusal resulted in any prejudice to defendant on the issue of damages. A similar problem was considered in *Hildebrand v. Baltimore & O. R.R. Co.*, 41 Ill.App.2d 217, 227 (1963). There several of the plaintiff's attending physicians had not been called and the court refused IPI—Civil 2d 5.01. In affirming the refusal, the court stated:

> "* * * [N]o case is cited holding it reversible error alone not to give the instruction. To hold that it alone constitutes reversible error would impose upon the plaintiff, the task of producing every medical attendant who treated him or else be faced with the charge by the court that the testimony would be adverse. This result would be undesirable and we believe the trial court should have a wide discretion in giving of this instruction."

We believe that on the issue of damages such reasoning should apply with equal force to close relatives of the plaintiff. We find that no prejudice resulted to defendant and hold that the trial court was correct in refusing the instruction.

Defendant claims error in the fact that over his objection a modified version of IPI—Civil 2d 41.03 was given. It is specifically noted that this instruction was tendered by Kramer, and not plaintiff. As given, the instruction read:

> "Although there is more than one defendant in this action, it does not follow from that fact that although defendant Harry Alfred Keenan is liable, defendant Frank Kramer is also liable. Defendant Frank Kramer is entitled to a fair consideration of his own defense. Defendant Frank Kramer is not to be prejudiced by the fact that the court has directed that you find against Harry Alfred Keenan. The instructions govern the case as to each defendant, insofar as they are applicable to him, to the same effect as if he were the only defendant in the action, and regardless of whether reference

is made to defendant or defendants, in the singular or plural form. You will decide each defendant's case separately as if each were a separate lawsuit."

■■ The "Notes on Use" for the above instruction explain that it should be given in cases where the same issue and questions of law are applicable to two or more defendants and that its purpose is to avoid repetitive instructions. Here, the issues and questions of law concerning each defendant were different, but we believe that a reading of this instruction served a proper purpose. It clearly and unequivocally removed from the jurors any doubt as to the effect that a directed verdict against one defendant may have on their judgment concerning the other defendant, and it instructed them to consider the case fairly and without prejudice. Under the circumstances, we find no error in the giving of this instruction.

Defendant maintains that the trial court erred in refusing to admit two of six photographs of the accident scene. Any probative value in these photographs concerned the issue of liability. Having examined the photos, we find them cumulative in nature and of no bearing upon the directed verdict on liability. The trial court was correct in excluding them from evidence.

It is argued that the trial court erred in denying defendant's motion to correct certain portions of the transcript. We have examined these points and find that, even if allowed, the corrections would have had no bearing on the issues presented for review.

■■ The final assignment of error is that the jury's award of damages was excessive, unreasonable and entirely unsupported by the evidence. The amount of damages is an issue of fact for the jury and that finding will not be altered on review unless it is so excessive as to denote that it was influenced by passion or prejudice. The test of excessiveness, however, is not solely a comparison between the verdict and special damages. Each verdict is examined with deference to the determination of the jury and the injury involved. *Lau v. West Towns Bus Co.*, 16 Ill.2d 442, 451-53 (1959); *McKasson v. Zimmer Manufacturing Co.*, 12 Ill.App.3d 429, 440-41 (1973).

Evidence revealed that immediately after impact plaintiff began to experience pain in his neck, arms, hands and fingers; that after a stop at the police station, he was taken by his son to Columbus Hospital in Chicago, where he remained for a week under the care of his family physician. He was placed in neck traction, given diathermy treatment, wore a neck collar and was given medication for pain. His condition stabilized in April of 1972. At the time of trial, it was evidenced that he had lost control in his left hand and the last three fingers of his right hand

due to numbness, that it had become awkward for him to use his hands and that this posed a daily problem which he did not have before the accident. Plaintiff also suffers from pain in the neck once or twice a week.

During a month in 1961, plaintiff had been hospitalized and treated by the same physician as a result of pain radiating from his neck to his right hand. The ailment was diagnosed as degenerative osteoarthritis of the cervical spine and radiculitis. Upon his release from the hospital, plaintiff had no further complaints. His condition was diagnosed as stable, his ailment, which can exist without pain, being part of the aging process but that trauma could disturb the stable condition. Plaintiff's doctor was of the opinion, based on a reasonable degree of medical certainty, that the injury received in the auto accident aggravated the pre-existing condition, that the blow to the head was the cause of the numbness and pain, and that the condition was permanent. Defendant presented no expert medical testimony.

This evidence, all uncontroverted, was sufficient to support the jury's verdict which, under the circumstances, is not excessive.

Judgment affirmed.

GUILD and RECHENMACHER, JJ., concur.