MAGDALENE KOSCH *et al.*, Plaintiffs-Appellees, *v.* DONALD MONROE, Defendant-Appellant.—(EDITH A. MOFFET, Defendant.)

First District (1st Division)    No. 81-828

Opinion filed March 15, 1982.—Rehearing denied April 19, 1982.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Frederick W. Temple and John Skapars, of counsel), for appellant.

Keith L. Davidson, of Louis G. Davidson & Associates, Ltd., of Chicago (Sidney Z. Karasik and Catherine L. Grahn, of counsel), for appellees.


JUSTICE GOLDBERG delivered the opinion of the court:

The physical facts in the automobile collision here involved are:

Dempster Street runs east and west. It has two lanes for traffic in each direction. Rand Road runs in a slightly northwesterly and southeasterly direction at its intersection with Dempster. Rand also has two lanes of traffic in each direction. South of the intersection the southbound or western traffic lanes of Rand give access to the toll road. About 200 to 300 yards north of the Dempster intersection Rand Road makes a gradual curve to the northwest. The posted speed limit on Rand is 40 miles per hour.

Edith A. Moffet, a defendant, was driving north on Rand with intention to make a left turn on Dempster to drive west. Donald Monroe, also a defendant, was driving south on Rand Road in his right-hand lane. He was about to continue south on Rand, across Dempster, for toll road access. Traffic lights on Rand were green at the time. As these defendants approached the intersection, two large dump trucks were proceeding south on Rand in the center or inside lane. These trucks were waiting to make a left turn onto Dempster to proceed east. Magdalene Kosch (plaintiff) was a passenger seated in the right rear of the car driven by defendant Moffet.

The trial court directed a verdict in favor of plaintiff on contributory negligence. The jury returned a verdict of not guilty as to defendant Moffet; and verdicts in favor of plaintiff against Monroe for $250,000 for personal injuries; and in favor of Erich Kosch, plaintiff's husband, for $50,000 for loss of consortium. Defendant Monroe has appealed. We will first consider the issues regarding liability.

Plaintiff testified she did not pay attention to the route of the Moffet automobile. She did not remember specifically the approach to the intersection or the color of the traffic lights upon approach. She has never driven an automobile. She knew the Moffet car had stopped but could not say for how long. She did notice that the car was making a left turn immediately before the crash. She also noticed a truck on the far side of Rand. She did not see the Monroe car before the crash.

Defendant Moffet testified she approached Dempster in the left-hand or center lane. She put on her left-turn signal. She saw two large dump trucks stopped on Rand waiting to make the turn to their left to proceed east on Dempster. The first truck had a left-turn signal on. These trucks were in the inside southbound lane of Rand.

As Moffet approached the intersection, the trucks obstructed her

view and she stopped. She did this to check the traffic and make sure she had a clear area. She remained stopped for one or two seconds. She saw no other traffic proceeding south on Rand. She could see about 200 feet of Rand Road to the north and she was satisfied she could then start and make the turn safely. She did not recall if she looked again for southbound cars on Rand. She did not see the Monroe car at any time until the collision. The cars came together as Moffet had crossed the inner southbound lane of Rand Road and was more than halfway into the outer southbound lane. The Monroe car struck her car at the rear door. She could not recall if she heard tires or brakes squeal before the crash. Her car was a total loss.

Defendant Monroe testified he had traveled this intersection a great many times. Both Rand and Dempster were busy streets. As he rounded the Rand curve proceeding south, he was in the right-hand or outside lane. He saw a green traffic light for traffic on Rand. He estimated his speed as 35 miles per hour. As he approached he saw the two large dump trucks apparently waiting to make left turns to go east on Dempster. The leading truck, partly into the intersection, was somewhat obstructed from his sight by the truck behind it. At that point these trucks obstructed his view so he could not see any other car which might turn left to go west on Dempster.

As Monroe proceeded he encountered a roughness in the road starting some 45 to 50 feet north of the intersection. He was familiar with this condition. He slowed down and reduced his speed perhaps 5 miles an hour. He did not look at the speedometer and was not sure about the speed reduction. Prior to his testimony he did not tell the police or any other person about this speed reduction. He did not swerve. He saw the Moffet car ahead of him in his traffic lane. That was the first time he had seen it. At that time he was just about at the rear of the second dump truck which would put him 40 to 45 feet away from the point of impact. On his deposition he testified he was 30 to 40 feet from the Moffet car when he first saw it. He jammed on the brakes when he saw the car and skidded into the collision. In an opening statement his attorney stated Monroe left approximately 54 feet of skid marks in his attempt to stop before the collision. Monroe did not blow his horn although he had time to do so. He struck the Moffet car about in its center. Damage to his own car was confined to the front with more damage on the right than on the left. His car swung the Moffet car around into the outer eastbound Dempster lane. His car stopped on the inner eastbound Dempster lane.

Plaintiff Kosch and her husband are very good friends of defendant Moffet and have been her neighbors for more than 20 years. No post-trial motion was filed by the plaintiffs against defendant Moffet. On the contrary, plaintiffs and Moffet entered into a written agreement which was

disclosed to the trial court. This agreement recited that defendant Moffet was insured under a $100,000 policy. The claim of plaintiffs against Moffet was settled by payment from the insurer to plaintiffs of $25,000. The agreement also provided that if the insurer offered plaintiffs an additional $70,000 prior to jury selection in event of a new trial and plaintiffs refused this offer, plaintiffs would not seek to enforce any judgment they might obtain against defendant Moffet or her insurer in excess of $95,000. On this basis the trial judge entered an order which dismissed the action of plaintiffs against defendant Moffet without prejudice.

# I

Defendant Monroe first urges Moffet was guilty of negligence as a matter of law. The verdict found the issues in favor of defendant Moffet. The notice of appeal filed by Monroe states no challenge against this verdict. Monroe filed no counterclaim or third-party action for contribution against Moffet. In fact, as above shown, the trial court has entered an order which dismissed the action of plaintiffs against Moffet without prejudice. Thus, the contentions in Monroe's brief directed against the alleged negligence of Moffet are virtually meaningless.

It appears to us that the only possible bearing this entire argument could have on the liability of Monroe to the plaintiffs would be the contention that he himself was free from negligence and the negligence of Moffet was the sole proximate cause of the injury to plaintiffs. However, "questions of proximate cause are ordinarily questions of fact for a jury to decide." *French v. City of Springfield* (1976), 65 Ill. 2d 74, 79, 357 N.E.2d 438.

Monroe stresses the alleged violation by Moffet of the motor vehicle statute requiring a driver who intends to turn left shall yield the right-of-way to approaching vehicles which are "so close as to constitute an immediate hazard * * *." Ill. Rev. Stat. 1979, ch. 95½, par. 11—902.

The authority cited in this regard by Monroe specifically holds that violation of this type of statute is not "negligence per se, inasmuch as it may be rebutted by proof that a person nonetheless acted reasonably under the circumstances [citation]." *(Cowan v. Wheeler* (1979), 76 Ill. App. 3d 259, 265, 395 N.E.2d 32.) In *Cowan,* this court considered all of the evidence and concluded that under the circumstances there disclosed the trial court properly directed a verdict against defendant on the issue of his negligence. However, the facts in *Cowan* are far different from the case at bar. There, defendant admitted he made a left turn and then for the first time saw plaintiffs' car about 30 feet away. Defendant also testified "he could see at least two or three blocks to the south when he was stopped at the intersection before starting to turn left." 76 Ill. App. 3d 259, 260.

Defendant Monroe also cites *Wanner v. Keenan* (1974), 22 Ill. App. 3d 930, 317 N.E.2d 114. However, in *Wanner* defendant admitted that he had "4 or 5 shots of whiskey and 2 12-ounce bottles of beer at the tavern" and also that he made a left turn "without stopping to ascertain whether there was a safe interval in which to proceed * * *." 22 Ill. App. 3d 930, 934.

In the case before us defendant Moffet testified clearly she could see some 200 feet ahead. However, the two dump trucks waiting to make the left turn into Dempster obstructed her view particularly because of the slight slant in Rand. Accordingly, Moffet stopped as she approached the intersection even though she did not then see any vehicle approaching from the north.

■■ We are obliged to conclude that the conduct of Moffet was not, as a matter of law, necessarily the sole proximate cause of the injuries here. This will appear more strongly after the following résumé of the testimony of Monroe. Thus, any contention which Monroe is making against the verdict in favor of Moffet must necessarily be rejected.

## II

Defendant Monroe urges he was not negligent so that the trial court should have granted his motion for judgment *n.o.v.* and alternatively the judgments against him are contrary to the manifest weight of the evidence. In our opinion, no amount of argument and citation of cases can avoid the conclusion that the testimony of defendant Monroe was contradictory in a number of aspects.

Monroe testified this intersection was a place where a driver was required to be alert. He saw his traffic light was green when he was 200 to 300 yards from the intersection. He testified regarding his own speed that he was proceeding past the standing dump trucks at about 35 miles per hour. That was his highest speed before the collision. However, as he approached the end of the second truck, he slowed down and reduced his speed "perhaps" 5 miles an hour due to roughness in the road. He conceded that he never looked at the speedometer and therefore was not sure about his speed. In addition, he admitted he did not tell the police or any other person about this speed reduction.

His view of the road was obstructed by the two dump trucks. He testified he saw the turn signal on one of the trucks but not on both. In his deposition he stated both trucks had turn signals on for left turns. At one point he realized his view of the road was obstructed so that he could not see adequately if another vehicle turned left in front of him.

Regarding his distance from the Moffet car when he first saw it, he testified he was some 40 to 45 feet away. At that time the Moffet car was

in his traffic lane. On his deposition he testified he was then 30 to 40 feet away. He conceded that he did not attempt to swerve to avoid the collision. In his deposition he said, "I immediately hit my brakes and skidded to the point of impact." The impact spun the Moffet car around. Also, the car was pushed south so that it stopped in the outer eastbound lane of Dempster. Monroe's car was stopped in the inner eastbound lane of Dempster.

Counsel for defendant cites various stopping-distance charts as a result of which he concludes that Monroe would be obliged to travel beween 15 to 20 miles an hour to avoid the collision and the law does not require him to do so. In a situation of this type the question of negligence is an issue of fact which it was the duty of the jury to decide. *Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 43, 382 N.E.2d 232; *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 12, 373 N.E.2d 1326.

This record presents simply a question of credibility which it was the initial duty of the jury to decide. (*Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 553, 356 N.E.2d 779.) Neither the trial court nor this court is empowered to set aside the verdict simply because we feel that another conclusion might be more reasonable. *Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 43.

■■ We conclude the trial court did not err in denying the motion of defendant Monroe for judgment *n.o.v.* under the principles of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504. The verdict against Monroe is supported by the manifest weight of the evidence.

### III

Defendant urges error in Illinois Pattern Jury Instruction, Civil, No. 60.01 (2d ed. 1971) (hereinafter cited as IPI Civil) pertaining to unreasonable speed. (See Ill. Rev. Stat. 1979, ch. 95½, pars. 11—601(a), 11—902.) The same instruction referred to the section of the statute as regards the making of a left turn by Moffet. Defendant cites no authority for this contention. (See *Little Rock Missionary Baptist Church v. Olex* (1979), 73 Ill. App. 3d 402, 404, 392 N.E.2d 130.) We find no error in this regard.

Defendant complains against the instruction on the issues (IPI Civil No. 20.01), and the instruction on circumstantial evidence (IPI Civil No. 1.03). We find no error as to either instruction. Generally speaking, any fact or issue can be proved by circumstantial evidence as well as direct evidence. It has been repeatedly held that "positive direct evidence including that of eyewitnesses may be discredited and contradicted by circumstantial evidence." (*Oudshoorn v. Warsaw Trucking Co.* (1976), 38 Ill. App. 3d 920, 924, 349 N.E.2d 648, and cases there cited.) The issues

instruction properly told the jury that plaintiff claims negligence of Monroe in driving at an unreasonable speed, failing to reduce speed as reasonably necessary and failing to keep a reasonable lookout.

Monroe urges that if a fact is to be established by circumstantial evidence, that evidence must be so strong " 'that it is the only conclusion that can be drawn therefrom.' " (*McKinney v. Illinois Power Co.* (1960), 26 Ill. App. 2d 193, 204, 167 N.E.2d 249, quoting from *Coffin v. Chicago City Ry. Co.* (1929), 251 Ill. App. 169, 175, *appeal denied*.) But, in *Wood v. Mobil Chemical Co.* (1977), 50 Ill. App. 3d 465, 472, 365 N.E.2d 1087, *appeal denied* (1977), 66 Ill. 2d 642, this court expressly stated:

> "No authority need be cited for the settled principle that facts may be proven either by direct or circumstantial evidence."

■■ In *Wood*, because there was circumstantial evidence before the jury, it was held proper for the court to give IPI Civil No. 1.03 on circumstantial evidence. In fact, it has been held that the charge of excessive speed may be proved by circumstantial evidence. (*Penzin v. Stratton* (1974), 26 Ill. App. 3d 475, 479-80, 325 N.E.2d 732, *appeal denied* (1975), 58 Ill. 2d 597.) In our opinion, the above statement of fact demonstrates that there was ample circumstantial evidence of each of the three charges against Monroe above stated so that it was proper for the trial court to submit these matters to the jury and to give the proper instruction on circumstantial evidence.

Monroe also contends that the following non-IPI instruction given to the jury on motion of plaintiff is improper:

> "If you find in favor of the plaintiff Magdalene Kosch and that her injury and disability was in any respect increased or aggravated by the nature and extent of the medical care and treatment that she received, that circumstance shall not diminish the extent of the damages you find she is entitled to as compensation for her injuries and disabilities, resulting from the occurrence."

Monroe urges there was no evidentiary basis for this instruction and the matter was covered by giving IPI Civil No. 12.04 and IPI Civil No. 15.01. There was expert evidence that a fracture of plaintiff's right clavicle had been overlooked by one of the attending physicians and that this failure of treatment aggravated plaintiff's condition. In *Wood*, this court approved a rather similar instruction, also non-IPI, on the theory that there was evidence that the medical treatment aggravated the preexisting injury. *Wood v. Mobil Chemical Co.* (1977), 50 Ill. App. 3d 465, 475.

As a general matter, referring to all of the instructions, reviewing courts have an understandable reluctance to reverse judgments because of errors in instructions. It must be conceded that it is impossible in any trial to ascertain accurately the effect of any instruction upon the jury. It

has been consistently held (*Burgdorff v. International Business Machines Corp.* (1979), 74 Ill. App. 3d 158, 165-66, 392 N.E.2d 183, quoting from *Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 515-16, 119 N.E.2d 241):

> " '[T]he trend of judicial opinion reveals a reluctance to reverse cases on the ground of technical errors in instructions; hence, courts have reiterated that the instructions will be considered as a whole, and where the jury has not been misled, and the complaining party's rights have not been prejudiced by minor irregularities, such errors will not be deemed grounds for reversal.' "

We find no error in this regard.

## IV

Defendant contends the verdicts were influenced by insinuations of insurance coverage and inflammatory arguments. Regarding the insurance issue, counsel for plaintiff asked during *voir dire*:

> "The fact that we have not succeeded in adjusting the claim in some manner between us like some other matters have been mentioned here, I take it that does not start you out feeling that any plaintiff has or any defendant has been treated unfairly."

Also during *voir dire*, counsel for plaintiff asked a prospective juror:

> "* * * I am wondering whether you would consider that your wife's involvement with Firemen's Fund as an insurance company that does defend claims could in any way cause you to start out in this case with a notion that any claim is excessive or unwarranted merely because it has been brought to court?"

Finally in closing argument, counsel for plaintiff stated:

> "We are asking for the opportunity to prove our case to you and I can tell you that Mr. Monroe, wherever he is, and Mrs. Moffet, will feel no pain if you render a just verdict in this case."

We do not consider these statements of sufficient magnitude to require reversal. The statements in *voir dire* do not necessarily imply insurance coverage. The first statement, cited above, merely refers to the failure to settle the controversy among the parties. Certainly parties to litigation often settle their differences without the involvement of insurance companies. Likewise, the second question quoted above can be interpreted as a legitimate inquiry into a possible defense-oriented bias of a prospective juror whose wife was employed by an insurance company. There was no specific indication that insurance companies were involved in the instant controversy.

Concerning the closing argument, we addressed a similar situation in *Baikie v. Luther High School South* (1977), 51 Ill. App. 3d 405, 366 N.E.2d 542. In *Baikie*, counsel for plaintiff stated plaintiff did not submit medical bills because they were paid "by other sources" (51 Ill. App. 3d 405, 412),

and that defendant's career would not " 'go down the drain by this lawsuit. Contrary there are no repercussions as a result of this.' " (51 Ill. App. 3d 405, 411.) We held these comments were of a general nature and did not require reversal. (51 Ill. App. 3d 405, 412.) We do not find significant legal distinction between the statements, defendant "will feel no pain" and "there are no repercussions as a result of this."

In the case at bar, there was no specific mention of insurance coverage. In *Baikie* we felt that fact was significant, even though it is clear that simply the mention of insurance does not in itself require reversal. 51 Ill. App. 3d 405, 412; see also *Sheley v. Guy* (1976), 63 Ill. 2d 544, 348 N.E.2d 835.

In *American State Bank v. County of Woodford* (1977), 55 Ill. App. 3d 123, 129, 371 N.E.2d 232, *appeal denied* (1978), 71 Ill. 2d 597, we discussed the diminishing relevance of the rule prohibiting the mention of insurance coverage:

> "While the mention of insurance during the course of trial is still frowned on by the Illinois courts, it is not quite the *bete noir* that it was a generation or more ago. The ubiquity of insurance, the tendency of the carriers to lament their underwriting losses in the public prints, and the increasing sophistication of jurors on the subject all tend to water down what was formerly an absolute rule."

We find the statements at issue did not necessarily indicate insurance coverage, and even if the existence of insurance was in some way implied, the statements do not require reversal.

## V

As to closing argument, defendant complains of the reference to the car driven by defendant as a "tank" (the car was a 1973 Cadillac), and the statement that the fact defendant had the right-of-way did not give him "a license to kill or maim." Defendant also complains plaintiff's argument concentrated on the liability of defendant, while remaining virtually silent on the liability of his co-defendant, Moffet. Finally, defendant takes exception to the "colorful" statements of plaintiff's counsel describing pain as "torture" and his statement that "many people will pray to die from pain but nobody prays for pain."

Our review of the propriety of the argument of counsel is extremely narrow. In *Bise's Supermarket, Inc. v. Valley Forge Insurance Co.* (1977), 48 Ill. App. 3d 822, 825, 363 N.E.2d 186, quoting from *Enloe v. Kirkwood* (1970), 120 Ill. App. 2d 117, 123, 256 N.E.2d 459, *appeal denied* (1970), 43 Ill. 2d 397, we stated the standard of appellate review:

> " 'The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must

be indulged in that the trial court has performed his duty and properly exercised the discretion vested in him. [Citation.] The attitude and demeanor of counsel and the general atmosphere of the trial are observed by the trial court, and cannot be reproduced in the record on appeal. The trial court is, therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument, and unless clearly an abuse of discretion, its ruling should be upheld. City of Chicago v. Chicago Title & Trust Co., 331 Ill. 322, 163 N.E. 17.' "

We do not believe the statements at issue in the case at bar are of a sufficiently prejudicial nature as to justify our reversal of the judgments.

## VI

The jury awarded plaintiff Magdalene Kosch $250,000 for her injuries, and her husband Erich Kosch $50,000 for loss of consortium. Defendant contends these judgments are excessive as a matter of law. Defendant argues the verdicts were the result of the jury's "passion and prejudice." We do not agree.

Magdalene Kosch suffered a fractured right pelvis, humerus, and clavicle. Immediately after the collision she remained in the hospital for six weeks. After her release her pain continued and her injuries did not heal properly. Later, she underwent two surgical procedures. The first was for repair and removal of part of her fractured clavicle, and the second, a thoracic sympathectomy, to relieve pain by severing nerves to the upper extremity.

Although her pain was alleviated to a certain extent, plaintiff has continued to experience pain even after her operations. She has been fitted with a stimupulse which automatically administers electric shocks to reduce pain. The device has helped her in this regard.

In addition, plaintiff has been diagnosed as suffering from reflex sympathetic dystrophy, which causes a drooping of her right shoulder and restricted mobility in that shoulder, and also hyperthesia which causes weakness, numbness, and discoloration of her right hand. While the exact extent of Mrs. Kosch's future recovery is not known, one specialist testified she would continue to have trouble for the rest of her life.

Mrs. Kosch proved special pecuniary damages exceeding $23,000. Also, "[t]he test of excessiveness, however, is not solely a comparison between the verdict and special damages. Each verdict is examined with deference to the determination of the jury and the injury involved." *Wanner v. Keenan* (1974), 22 Ill. App. 3d 930, 937, and cases there cited.

Erich Kosch testified his wife is not nearly as active as she had been prior to the accident. She is unable to perform much of the housework, and he now does much of this work. He also testified that prior to the

accident, he and his wife had an active sex life; however, they have not had a sexual relationship for a year and a half.

In *Hartigan v. Robertson* (1980), 87 Ill. App. 3d 732, 739, 409 N.E.2d 366, we enunciated the test by which we must determine whether a jury verdict is excessive:

> " 'The amount of damages to be awarded is largely within the discretion of the jury.' [Citation.] Unless improper instructions were given or evidence erroneously excluded, courts are 'reluctant to overturn a jury's determination of damages when the award is within the range of the evidence * * *.' [Citations.] The test of an excessive verdict is whether the total amount thereof falls within the flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience."

In the case at bar, there is no dispute that plaintiff has suffered persistent pain for the eight years since the accident, she has undergone two operations, and has, and will continue to have, some physical disability from her injuries. Regarding her husband, Erich Kosch, there is no dispute that his sex life with his wife has diminished the last two years, and he has been required to spend much more time in household work since the accident.

■■ Defendant cites statistics which indicate the average recovery for humerus fractures and clavicle fractures is $77,699 each. We do not find these statistics persuasive. First, because Mrs. Kosch suffered both a fractured humerus and fractured clavicle, her "average" recovery for those injuries presumably should be $155,398. That figure does not calculate damages for her fractured pelvis, and whatever complications and suffering which the jury apparently determined Mrs. Kosch experienced in "excess of the average" for people suffering similar injuries. We do not find the verdicts awarded by the jury to be "so large as to shock the judicial conscience." We conclude the verdicts are not excessive as a matter of law.

## VII

Defendant contends plaintiff's counsel improperly impeached a witness he called to the stand, Dr. Prem Pahwa, and that plaintiff's counsel utilized an improper hypothetical question to a second physician, Dr. Allan Hirschtick. We find these contentions without substantial merit.

Dr. Pahwa testified he did not diagnose any problem with Mrs. Kosch's clavicle, nor the presence of reflex sympathetic dystrophy. Those diagnoses were contrary to those of two other treating physicians. Counsel's "impeachment" consisted of questioning whether it is difficult to detect abnormality of a clavicle from reading X rays, and whether Dr.

Pahwa had performed any other tests which would have verified injury to the clavicle or reflex sympathetic dystrophy.

In Illinois, when this case was tried, it was improper to impeach one's own witness absent a showing of either hostility of the witness or good faith surprise of counsel at a particular answer. (See *Seibutis v. Smith* (1980), 83 Ill. App. 3d 1010, 404 N.E.2d 950.) However, effective April 1, 1982, the Supreme Court of Illinois has eliminated this prohibition by amended Rule 238.

■■ In any event, in the case at bar, we find no "impeachment" of Dr. Pahwa. In counsel's questioning of the doctor, there was not a hint of possible professional incompetence or personal untruthfulness. The examination appears to be merely a good faith effort to determine why Dr. Pahwa's examination may not have detected problems diagnosed by other treating physicians.

Defendant also argues a hypothetical question posed to Dr. Hirschtick was unduly lengthy and prejudicial. The hypothetical question to Dr. Hirschtick and his answer consisted of 23 pages of transcript. Included were several objections, and a side-bar conference.

Defendant cites *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301. In *Borowski* the supreme court held that three hypothetical questions which, with objections related thereto, consisted of approximately 90, 97, and 68 pages of transcript respectively, were unduly lengthy. (60 Ill. 2d 418, 426-28.) In addition, the court found prejudice to the defendant because of repeated references to "purely argumentative material designed to persuade the jury, to encourage it to disbelieve the testimony of defendants' witness, and to prejudice the defendants in the eyes of the jury." 60 Ill. 2d 418, 426.

■■ In the case at bar, while the hypothetical question at issue may have been verbose and may have included some extraneous material, we do not find these factors caused discernible prejudice to defendant which would justify a new trial.

The judgments appealed from are accordingly affirmed.

Judgments affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.