NANCY GIBSON, Plaintiff-Appellant, *v.* STATE FARM MUTUAL AUTO-
MOBILE INSURANCE COMPANY, Defendant-Appellee.

First District (5th Division)   No. 83—0880

Opinion filed June 22, 1984.

David J. Feeley, of Winnetka, for appellant.

Victor J. Piekarski and Michael Resis, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from a judgment for defendant in an action seeking a declaration of her rights under the uninsured motorist provisions of two automobile insurance policies issued by defendant. She contends that: (1) the trial court erred in (a) ruling that she bore the burden of proving that a hit-and-run vehicle was involved in the accident which caused the insured's injury, and (b) admitting the hearsay testimony of police officers who investigated the accident; and (2) the judgment is contrary to the manifest weight of the evidence.

In her complaint for declaratory judgment, plaintiff alleged in pertinent part that her husband, Kevin Gibson (Gibson), died on August

2, 1978, as the result of an accident in which the motorcycle he was driving was struck by a hit-and-run motor vehicle; and that at the time of his death Gibson was the insured under two policies issued by defendant both of which provided in relevant part:

> "We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle.*

> \* \* \*

> *Uninsured Motor Vehicle* means:

> \* \* \*

> 3. a 'hit-and-run' land motor vehicle whose owner or driver remains unknown and which strikes:
> a. the *insured* or
> b. the vehicle the *insured* is *occupying* and causes *bodily injury* to the *insured.*"

She further alleged that defendant had wrongfully denied coverage, and asked that the trial court declare her right to recover under the uninsured motorist provisions of the policies. In its answer, defendant admitted that Gibson was the insured under two automobile insurance policies issued by it; that those policies contained uninsured motorist provisions which covered injuries caused by a hit-and-run vehicle; and that Gibson died as a result of injuries sustained in a vehicular accident. However, it denied that any hit-and-run motor vehicle was involved in the accident, and a hearing was therefore held on the sole issue of the cause of the accident which resulted in Gibson's death.

At trial, David Wisniewski testified that, in the early morning hours of August 2, 1978, he and Gibson were riding their motorcycles northbound on Western Boulevard near 49th Street on the south side of Chicago. He was in the left lane, and Gibson was beside him in the right lane; however, as they approached a viaduct just south of 49th Street, he accelerated and passed Gibson, but remained in the left lane. Shortly thereafter, he heard a loud screech and a crash, and when he glanced back he saw Gibson and his motorcycle flying through the air. Wisniewski further testified that after the accident, both Gibson and his motorcycle were north of the intersection of 49th and Western; Gibson was lying near a lamp post at the corner, and his motorcycle was in the middle of the street. He (Wisniewski) then drove to 47th and Western, where he located two officers, explained what happened, and returned to the scene. The next morning, he again visited the site of the accident, and noted tire tracks near the

middle of the intersection and under the viaduct, as if an automobile driver had slammed on his brakes. Wisniewski also stated that the screeching sound he heard at the time of the accident was made by an automobile rather than by Gibson's motorcycle. On cross-examination, Wisniewski acknowledged that he did not see any cars traveling in the northbound lanes of Western Boulevard prior to or immediately after the accident. He further testified that, after the accident, Gibson's motorcycle was in one piece, but the handlebars and seat were damaged, and the front tire was flat as the result of being pierced by a screwdriver; he knew that Gibson kept a screwdriver in the tool kit under his seat, and opined that the screwdriver entered the wheel as the motorcycle was flying through the air.

Caesar Torres testified that on the night of the accident he was in the yard of the Dracket Company, located northeast of the intersection of 49th Street and Western Boulevard, when he heard the noise of motorcycle engines. He was approximately 100 feet from the well-lighted intersection, and when he looked up, he saw two motorcycles emerge from under the viaduct, traveling north on Western, the one in the left lane riding slightly ahead of the vehicle in the right lane. As the motorcycles approached the intersection, a dark orange automobile attempted to pass between them, and the car's right front fender struck the motorcycle in the right lane, causing the motorcycle to overturn and the driver to be thrown against a lamp post on the corner; the point of impact was on the left side of the motorcycle near the rear wheel. Torres stated that he did not hear brakes screeching, nor did he hear the sound of a collision. After the accident, the automobile involved turned east onto 49th Street, passing within five feet of him, and he noted that there were two people in the car and that the driver was a white male. Torres further testified that, immediately after the accident, he described what he had seen to a police officer, and signed a statement which the officer prepared, but asserted that he did not know what the statement said, since he cannot read or write English. On cross-examination, Torres admitted that there is a viaduct across Western Boulevard just south of 49th Street, but asserted that this structure did not block his view of the accident because it occurred in the intersection. Torres acknowledged stating in a deposition that he could not describe or give the number of the vehicle's occupants and that after the accident Gibson's motorcycle was in two pieces. Finally, Torres testified that he did not recall telling an insurance investigator shortly after the accident that he did not see the car hit the motorcycle, nor did he recall telling an officer on the night of the accident that he did not see the car collide with the motorcycle.

Donald Rohe, testifying for defendant, stated that he was the insurance investigator assigned by defendant to investigate the accident which caused Gibson's death. He spoke to Torres by telephone on September 25, 1978, and although Torres at first said that he saw another vehicle strike Gibson's motorcycle, he later stated that he thought that was what happened, but did not actually see any collision because the embankment of the viaduct obstructed his vision. Torres also said at that time that both motorcycles were hit by the car. Rohe further testified that on October 2, 1978, Wisniewski told him that he did not see any vehicle but did hear a screeching noise that sounded like an automobile skidding or brakes squealing.

Officer Krause testified for defendant that he responded to a radio call of an accident at 49th and Western Boulevard on the night of August 1-2, 1978. When he arrived at the scene, Gibson was lying against a lamp post on the northeast corner of the intersection, and his motorcycle was lying on its side in the middle of Western, approximately 50 feet north of the intersection. He interviewed Wisniewski, who said that he did not know what happened, then spoke to Torres, who stated that he had heard noises and, when he looked up, he saw a motorcycle sliding down Western and a car driving east on 49th Street, but did not see the car strike the motorcycle. Krause next testified that he examined the scene of the accident that night, and found fresh scrape marks on the east curb of Western Boulevard under the viaduct; there were other gouges in the pavement of the street, beginning under the viaduct and ending where Gibson's motorcycle was resting. An examination of the motorcycle revealed that it was heavily damaged by concrete scraping marks, but contained no other residue or substance. Krause acknowledged that his report stated that the automobile seen by Torres contained a white male and a white female, and that he could not recall whether it was noted in the report that Torres said he did not see the collision, although he thought there was a note to that effect.

Officer Taglioni testified that, because the accident was initially classified as a hit-and-run traffic accident, further investigation was undertaken. He and his partner reviewed the reports and statements of eyewitnesses, then examined the scene on the morning of August 2, 1978, specifically seeking evidence that another vehicle was involved. They found gouge marks along the curb on the right-hand side of the northbound lanes of Western Boulevard, commencing under the viaduct south of 49th Street; Taglioni concluded that the marks were of recent origin, because they were still clean and there was concrete powder around them. He and his partner then went to the spot where

reports indicated Torres was standing at the time of the accident, and determined that the point where the gouge marks began was not visible from that site; Torres' view would have been blocked by the embankment around the viaduct. Taglioni further stated that the section of Western Boulevard which is under the viaduct was visible only to a person standing within five or six feet of the northeast corner of Western and 49th Street. The officer then testified that he examined Gibson's motorcycle on the morning of August 2, and noted that it was badly damaged on the right side, and that there was a residue of powder on it, which he thought was concrete dust, although no laboratory tests were made to confirm his assumption. However, there was no evidence of contact with another vehicle. Taglioni admitted that he did not interview any of the witnesses or the officers who compiled the initial accident reports, although he did take those reports and the witnesses' statements into account when conducting his investigation.

Officer Puhr testified that he became involved in investigating the accident on August 5, 1978. He examined Gibson's motorcycle on that date, and determined that the only damage to that vehicle was on the right side, and consisted of scrape marks on the heavy metal parts; the left side of the vehicle was undamaged, and bore no paint, metal, or other substance which would have indicated contact with another vehicle. Gibson's clothing was also tested for evidence of the transfer of foreign substances which might have proved that another vehicle was involved, but the tests were negative. Puhr next stated that scrape marks on the pavement indicated that Gibson's motorcycle first made contact with the ground underneath the viaduct south of 49th Street, and it would have been impossible for Torres, who, reports indicated, was standing 50 to 60 feet east of the intersection, to have seen what caused the motorcycle to go down. Puhr also stated that he interviewed Wisniewski, who said he saw no other vehicles in the northbound lanes, but did not interview Torres, although he stated that one of his partners did interview him. Finally, Puhr testified that, as a result of the subsequent investigation, the incident was reclassified from a hit-and-run accident to a single vehicle occurrence.

The trial court concluded that plaintiff had failed to prove that a hit-and-run vehicle struck Gibson's motorcycle, and entered judgment for defendant. This appeal followed.

OPINION

■ Plaintiff first contends that the burden of proof was erroneously placed on her, positing that defendant should have been required to bear the burden of proving the negative averment of its an-

swer, *i.e.*, that no contact with another vehicle took place.

Initially, we note that this issue was not raised before the trial court. In fact, when specifically asked at oral argument who bore the burden of proof, plaintiff's counsel represented to the trial court that the burden was on plaintiff to prove the facts giving rise to coverage. Generally, we will not consider issues presented for the first time on appeal (*Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 443 N.E.2d 575), nor will a party be heard to complain of an action induced by its own stipulation or acquiescence (*Ziebell v. Board of Trustees* (1979), 73 Ill. App. 3d 894, 392 N.E.2d 101). For these reasons, the issue must be deemed waived for purposes of review.

■ We further note, however, that in our view the burden of proof was correctly placed on plaintiff in the instant case. Our courts have consistently held that the claimant under an insurance policy has the burden of proving that he comes within the terms of coverage (*Hays v. Country Mutual Insurance Co.* (1963), 28 Ill. 2d 601, 192 N.E.2d 855; *Polzin v. Phoenix of Hartford Insurance Cos.* (1972), 5 Ill. App. 3d 84, 283 N.E.2d 324), a rule which is in accord with the general proposition that " 'the burden of proof rests on the party having the affirmative of the issue.' " (*Arrington v. Walter E. Heller International Corp.* (1975), 30 Ill. App. 3d 631, 639, 333 N.E.2d 50, 57.) Plaintiff seeks to shift her burden to defendant by reasoning that, in denying the allegations of her complaint, defendant in effect established a negative averment, and she argues that "a party is not required to prove a negative averment." (*Board of Trade v. Dow Jones & Co.* (1982), 108 Ill. App. 3d 681, 686, 439 N.E.2d 526, 530.) We believe that plaintiff misapprehends the cases so holding. In *Abhau v. Grassie* (1914), 262 Ill. 636, 638, 104 N.E. 1020, 1021, the supreme court noted:

> "The burden of proof does not depend upon the form of the proposition. The weight of authority is, that whoever asserts a claim or defense which depends upon a negative must establish the truth of the allegation, [citation] for that particular fact is essential to his case."

Here, however, defendant has asserted no claim or defense which depends upon a negative assertion; it merely answered the allegations of plaintiff's complaint, as it is required to do pursuant to section 2—610 of the Code of Civil Procedure, which provides in relevant part that "[e]very answer and subsequent pleading shall contain an explicit admission or denial of each allegation of the pleading to which it relates." (Ill. Rev. Stat. 1981, ch. 110, par. 2—610(a).) If plaintiff's rationale were to prevail, then the burden of proof would be placed on

the defendant in every case by the very act of denying the positive averments of the plaintiff's complaint, a result which would totally negate the general rule that the party asserting affirmative matter has the burden of proving the issue.

■ Plaintiff next contends that the testimony of Officers Taglioni and Puhr was based on hearsay and was therefore inadmissible, arguing that the sole basis for their conclusion that the accident occurred under the viaduct, as well as their purported determination that Torres could not possibly have seen the occurrence, was the reports of other officers and the written statements of the witnesses. However, plaintiff made no objection to the testimony of these officers, and it is established that a party who wishes to preserve a question regarding the admissibility of evidence must make an appropriate, timely objection at the time of its admission (*Vee See Construction Co. v. Luckett* (1981), 102 Ill. App. 3d 444, 430 N.E.2d 91; *Northern Trust Co. v. Winston* (1975), 32 Ill. App. 3d 199, 336 N.E.2d 543), and the failure to do so waives the issue for purposes of review (*Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 424 N.E.2d 1279).

■ Moreover, the record does not support plaintiff's assertion that the conclusions of these officers were based solely on hearsay; in fact, it appears that the sole basis for their opinion regarding where the accident occurred was their own personal observations. Both officers stated that they saw fresh scrape marks on the pavement, beginning at a point under the viaduct south of 49th Street, and that scrape marks caused by the motorcycle skidding on its side along the pavement were found on the right side of that vehicle. From this, they concluded that the accident occurred under the viaduct.

■ With regard to the opinion stated by the officers concerning Torres' inability to see the point under the viaduct where the scrape marks began, it does appear that their conclusion was based on hearsay, since the sole source of their knowledge of where Torres was standing was the report of another officer. However, even assuming that admission of this testimony was error, we note that not all such errors require reversal; it must be shown that admission of the incompetent evidence was prejudicial or materially affected the outcome of the trial. (*Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914, 408 N.E.2d 737.) Here, Officer Taglioni testified that from his own observations, he determined that the point where the scrape marks began would not be within the view of a person standing north and east of the viaduct unless that person was within five or six feet of the intersection of Western and 49th Street, while Torres stated in his testimony that he was approximately 100 feet from the northeast

corner of that intersection when the accident occurred. Both of these statements were within the personal knowledge of the respective witnesses, and taken together they establish the fact that Torres could not see under the viaduct (we further note, in this regard, that plaintiff acknowledges in her brief the accuracy of this conclusion). Since the fact asserted by the officers was established by other, competent evidence, plaintiff was not prejudiced in any way by the admission into evidence of the officers' conclusions, and any error therein was harmless. See *Stromquist v. Burlington Northern, Inc.* (1983), 112 Ill. App. 3d 37, 444 N.E.2d 1113.

■■ Finally, plaintiff contends that the judgment is contrary to the manifest weight of the evidence. In considering this issue, we must bear in mind that it is the province of the trial court, when sitting without a jury, to resolve disputed questions of fact and to determine the credibility of witnesses and the weight to be given their testimony (*MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 445 N.E.2d 418), and we will not substitute our judgment thereon unless the opposite conclusion is clearly evident (*Balla v. Department of Revenue* (1981), 96 Ill. App. 3d 293, 421 N.E.2d 236). Thus, it is not sufficient to show that the record would support a contrary decision (*Graham v. Mimms* (1982), 111 Ill. App. 3d 751, 444 N.E.2d 549); we will affirm if there is evidence to support the trial court's judgment (*Swartzberg v. Dresner* (1982), 107 Ill. App. 3d 318, 437 N.E.2d 860).

■■ In the instant case, the testimony of Torres that he saw a car strike the left rear portion of Gibson's motorcycle would support a finding that a hit-and-run vehicle was involved in the accident, the fact which plaintiff must prove in order to recover under the uninsured motorist provision. (*Ferega v. State Farm Mutual Automobile Insurance Co.* (1974), 58 Ill. 2d 109, 317 N.E.2d 550.) It is her position that Torres' testimony was conclusive on this point, and the trial court was required to accept it as true, citing *Sobotta v. Carlson* (1978), 65 Ill. App. 3d 752, 754, 382 N.E.2d 855, 857, wherein the court noted:

> " 'The general rule is that the testimony of an impartial or disinterested witness as to a fact, which is not of itself improbable and is not contradicted by other equally credible evidence, is to be taken as establishing such fact. However, where there are facts and circumstances appearing in evidence which naturally raise questions which reflect upon such testimony, then the aforesaid rule does not apply.' "

In the instant case, other evidence does raise numerous questions affecting the credibility of and weight to be accorded to Torres' testi-

mony, and the circumstantial evidence tends to contradict that testimony. (See *Kosch v. Monroe* (1982), 104 Ill. App. 3d 1085, 433 N.E.2d 1062 (positive direct evidence including that of eyewitnesses may be discredited and contradicted by circumstantial evidence).) The three officers who examined Gibson's motorcycle after the accident stated that there was no damage to the left side of that vehicle, which contradicts Torres' statement that a car struck that side of the motorcycle. Furthermore, Officer Puhr testified that there was no transfer of paint, metal, or other foreign substance on the motorcycle or on Gibson's clothing, a fact which tends to corroborate that no contact with another vehicle occurred. We also note that Torres' credibility was impeached by evidence that on the night of the accident, as well as shortly thereafter, he stated that when he first looked in the direction of the noise, the motorcycle was already skidding along the pavement, and the car in question was traveling east on 49th Street, and that he did not see the car strike the motorcycle. In this regard, other physical evidence indicates that whatever caused the accident occurred underneath the viaduct, out of Torres' line of vision. Officer Krause testified that fresh scrape marks began under the viaduct and ended where Gibson's motorcycle came to rest 50 feet north of the intersection. That these marks were of recent origin, and made by Gibson's motorcycle, is corroborated by another officer, who testified that there was still powdered concrete residue around the scrape marks, and that residue which appeared to be concrete was found on the right side of the motorcycle.

Under these circumstances, we believe that the trial court was justified in giving little credence to Torres' testimony, and in the light of the lack of any other evidence establishing that Gibson's motorcycle was struck by another vehicle, it is our view that the trial court's finding that plaintiff failed to sustain her burden of proving that contact with a hit-and-run vehicle occurred is not contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

MEJDA, P.J., and LORENZ, J., concur.